# CHARLESTON.

Hargreaves *et al.* v. Kimberly.

Submitted June 23, 1885.—Decided November 14, 1885.

1. A declaration in case for diversion of surface water held sufficient. *Gillison* v. *Charleston*, 16 W. Va. 282, and *Knight* v. *Brown*, 25 W. Va. 808, *adhered* to. (p. 790.)

2. Where evidence is introduced, which appears proper at the time,

and the court admits it and refuses to exclude it on motion of counsel with the remark : " It will be excluded, if it hereafter appears that it is irrelevant," and the record shows, that it afterwards appeared that it was irrelevant, but no motion was afterwards made by counsel to exclude it, the objection to its admission is waived. (p. 790.)

3. A party has a right to deal with a run on his land, as he sees fit, provided he does not cause the run in its usual condition to encroach upon the property of another. (p. 791.)

4. In repairing, maintaining or replacing the banks of a run on his own land a person has no right to change or narrow the natural course of the run, so as to cause it to encroach upon the property of another and injure him. (p. 791.)

5. Where the record does not show, whether certain instructions made part of the record were given or refused, the appellate court can not consider them. (p. 794.)

6. In an action for damages for diverting water from a run it was not error to refuse the following instruction asked for the defendant : " The defendant is not liable to plaintiffs for any washing, slipping or other injury to their property resulting from an extraordinary and unusual condition of the run." (p. 794.)

7. In an action for damages for diverting water it is proper to ask a witness to state from facts within his own knowledge what in his *opinion* was the amount of damages suffered by the plaintiff because of such diversion of the water ; and to authorize the giving of such opinion it is not necessary that the party be an expert. (p. 796.)

8. But it is error to permit a witness to answer in a case like this the following question : " What will be the future damage to the property from the acts of the defendant ?" (p. 797.)

9. Where the cause of the injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue the cause, the entire damage may be recovered in a single action ; but where the cause of the injury is in the nature of a nuisance and not permanent in its character but of such a character that it may be supposed, that the defendant would remove it rather than suffer at once the entire damage, which it might inflict if permanent, then the entire damage can not be recovered in a single action ; but actions may be maintained from time to time, as long as the cause of the injury continues. (p. 799.)

10. One trespass can not be set off in bar of another ; but where the

damage alleged by the plaintiff is caused in part by the wrongful act of the plaintiff, the defendant may by way of defence under the plea of not guilty prove such wrongful act of the plaintiff in *mitigation* of damages.    (p. 800.)

*W. P. Hubbard* for plaintiff in error.

*H. M. Russell* for defendant in error.

JOHNSON, PRESIDENT :

This was an action on the case brought in the circut court of Ohio county in September, 1883, to recover damages for causing surface-water to flow on the lot of plaintiffs, and also for damages to plaintiffs' trees from the use of coke-ovens near the said property and for injuring the health and destroying the comfort of the plaintiffs by said coke-ovens.    The defendant demurred to the declaration and to each count thereof.    The demurrer was overruled, and the defendant pleaded *not guilty*.    On the 28th day of January, 1884, a verdict was rendered against defendant for $325.00, which verdict he moved to set aside.    The court on the 10th day of July, 1884, overruled said motion, and on the 3d day of September, 1884, entered judgment on the verdict.    The defendant saved certain alleged errors in the rulings of the court by a bill of exceptions, which certifies all the evidence given in the case and shows, that the defendant excepted to the admission and rejection of evidence, also to the giving and refusing of instructions, and to the refusal to set aside the verdict and grant him a new trial.

To the judgment the defendant obtained a writ of error.

The first error assigned is the overruling of the demurrer to the declaration.    The plaintiff in error insists that he had the right to change the surface of his own land in the careful conduct of his own business, and it is insisted that there is no allegation in the second count of the declaration that the act of the defendant was " wrongfully, injuriously or negligently done."    The second count contains these words:  " Yet the said defendant, well knowing the premises, but contriving wrongfully and maliciously to injure the plaintiffs, afterwards, to-wit, on the first day of January, 1882, and on divers other days before and after that day made, prepared and dug such ditches, drains, troughs, dams and gutters

upon the land so occupied by him as aforesaid, and so dug, filled and altered the surface of the last named land that in times of rain-fall large quantities of the water which fell on the last named land were collected and diverted and caused to flow in and upon the said lot of the plaintiffs," &c. We think there is nothing in this objection and that the declaration and each count thereof is good. (*Gillison* v. *Charleston*, 16 W. Va. 282; *Knight* v. *Brown*, 25 W. Va. 808.)

It is assigned as error, that the court did not exclude from the jury the following statement of Mrs. Hargreaves: "All my ground washed away, and the fence fell down on the street and the front wall along with it, and I had to get all that wall rebuilt, and get all the ground filled up." The defendant by counsel moved to exclude what the witness said about the front wall. The court said, he would overrule the motion for the present; but if the testimony had no bearing upon anything mentioned in the declaration, it would thereafter be excluded, to which ruling the defendant by counsel excepted. The record does not show, that the counsel for defendant afterwards asked to have the evidence excluded. The first count of the declaration alleges, that by the acts of the defendant, "a certain wall, which the plaintiffs had built upon their said lot for the purpose of supporting one of the said dwellings, was undermined and caused to fall," &c. This was the first witness; and it did not appear, whether she was speaking of the same wall described in the declaration or not. What she said about it was drawn out on cross-examination; and before the counsel for defendant moved to exclude the evidence, it would have been an easy matter to have ascertained from the witness, whether the "front wall," which she had spoken of, was the same as that mentioned in the first count of the declaration. The counsel for plaintiff in error here insists, that it was afterwards made to appear, that the "front wall" spoken of by Mrs. Hargreaves was not the "wall" mentioned in the first count of the declaration, and that it was error for the court "not to redeem its promise" and exclude the evidence. The "promise" was a conditional one, "that if it shall appear that the wall" mentioned in the first count of the declaration is not the "front wall," of which the witness spoke, if asked to do so by counsel, the "court

will exclude the testimony." Counsel did not afterward ask the court to exclude the evidence, and so waived the objection, and the court did not err in refusing to exclude the evidence, when the objection was made to it. It would be unjust to the judge of the trial-court to hold, because he did not of his own motion exclude evidence shown to be irrelevant, which he had previously admitted, when it seemed at the time to be proper, that the judgment should be reversed and the verdict set aside.

It is also assigned as error, that the court refused to permit defendant to show, that the destruction of one panel of fence was with the consent of one of the plaintiffs. The court ruled, that the testimony of the witness in regard to the destruction of the fence is not a matter of controversy, and such evidence could not be considered by the jury. If this were an error, it was not to the injury of the defendant, and therefore he can not complain of it.

The instructions given and refused, are set out below as follows :

"The foregoing being all the evidence introduced to the jury, the plaintiff asked the court to give the jury each of the following instructions :

"INSTRUCTIONS.

"While the defendant, the run being on his land, had the right to deal with it as he saw fit, so that he did not cause the run, in its usual condition, to encroach upon the plaintiffs' property, yet he had no right, by any constructions or obstructions, to divert the run from its natural course so as to cause it, in its usual condition, to encroach upon the property of the plaintiffs, or to wash away their ground, and by the usual condition of the run is meant as well its condition at times of ordinary and usual floods and freshets as its condition in dry weather.

"In repairing, maintaining or replacing the bank of the run next his coke-ovens, the plaintiff has no right to change or narrow the natural course of the run so as to cause it to encroach upon the property of the plaintiffs, or to wash away their ground ; and if the jury believe from the evidence that in maintaining, repairing or replacing said bank, he has so narrowed or changed the natural course of the said run, he is liable for any damages thereby occasioned.

"To the giving of each of the said instructions, the defendant, by his counsel, objected, but the court overruled said several objections, and gave each of the said instructions; to which several rulings of the court, the defendant by his counsel, then and there excepted."

The court, upon the motion of the defendant, gave the following instructions to the jury :

### "INSTRUCTIONS.

"If the jury believe that the north side of plaintiffs' property was damaged by reason of an increase in the depth of the bed of the run, and that such increased depth was caused by the construction by the city of a sewer to carry the water of the run across Wetzel street, they are instructed that defendant is not liable for damages arising from such cause.

"The defendant has a right to maintain the bank of the run next his coke-ovens against washing, and to replace and restore it where it might have been injured by such washing, and defendant is not liable to plaintiffs for any damages which may have resulted to plaintiffs from such mainteance, replacement or restoration.

"If the jury believe that any of the plaintiffs deposited earth in the natural bed of the run so as to obstruct the course of the water therein, they are instructed that defendant had a right to remove such obstruction either by digging or causing the water to wash it away, and that for any damages resulting therefrom defendant is not liable.

"Even if the jury should believe from the evidence that smoke from defendant's coke-ovens sometimes reached the plaintiffs' property, yet the jury can not find for the plaintiffs on account of discomfort to them or damage to their trees unless the jury believe from the evidence that the smoke from defendant's ovens sensibly increased the discomfort or damage to plaintiffs arising from smoke caused by other manufacturing establishments in the city of Wheeling."

The defendant, by his counsel, moved the court to instruct the jury as follows :

### "INSTRUCTION.

"The run being wholly on defendnat's ground he had a right to deal with it in any way he saw fit so that he did not cause the run in its usual condition to encroach upon the

plaintiffs' property. The defendant is not liable to plaintiffs for any washing, slipping or other injury to their property resulting from an extraordinary and unusual condition of the run."

To the giving of this last instruction, the plaintiffs, by their counsel, objected, and the court thereupon gave to the jury an instruction in the words of the first sentence of the instruction so prayed, but refused to give to the jury the latter part of the instruction prayed, being so much as is comprised in the second sentence thereof; to which ruling and refusal of the court the defendant by his counsel then and there excepted.

The record as to what counsel in his brief calls the "refused" instructions, is as follows taken from the bill of exceptions :

"The defendant, by his counsel, asked the court to give each of the following instructions :

### "INSTRUCTIONS.

"The defendant had a right to occupy and improve his coal bank lot in such manner as he saw fit, using reasonable care in so doing, and is not liable because such improvements may have caused surface water to pass upon plaintiffs' adjacent land in greater quantities or in other directions than it was accustomed to flow.

" 'If the jury believe that the construction of defendant's wall and office in the place they were constructed, made it necessary for some of the water falling on defendants land to pass along the line between plaintiffs' property and defendant's coal bank property, and that one of the plaintiffs knowing this, agreed to such construction of defendant's wall and office, the jury are instructed that plaintiffs can not recover for any damages caused by the water so passing.'

" 'The jury are instructed that in determining the right of the plaintiffs to recover on account of discomfort to them or damage to their trees claimed to have been caused by smoke from defendant's coke-ovens, the jury are to consider the locality in which the plaintiffs property is situated, the kinds of trade and business carried on in the same city and neighborhood, and the exposure of plaintiffs' property to smoke caused by carrying on such trades.'

" 'Though the defendant, by the construction of buildings upon his ground, may have changed the course of surface water and made it to flow upon the property of plaintiffs, he is not liable for any damages caused thereby.'

"And the jury having brought in a verdict as in this record hereinbefore set forth, the defendant moved the court to set aside the said verdict and grant him a new trial, which motion was by the court refused; and to the ruling of the court refusing a new trial, the defendant, by his counsel, then and there excepted, and tendered this his bill of exceptions, praying that the same might be signed, sealed and made part of this record, which is now accordingly done."

The record does not show whether the last four instructions were given or refused. And even if it showed that they were refused, there was no exception to the refusal to give them; and therefore they can not be considered by this Court. (*Danks* v. *Rodeheaver*, *supra*, p. 274.)

A number of instructions were given on motion of defendant by counsel, to which the plaintiff did not except, and of course we will not examine them to see whether they propound the law correctly or not.

To each of the instructions given for plaintiffs the defendant by counsel excepted. We have carefully considered the instructions and decide that they propounded the law correctly. (*Gillison* v. *Charleston*, 16 W. Va. 282; *Knight* v. *Brown*, 25 W. Va. 808.)

The defendant by counsel asked the court to give the following instruction: "The run being wholly on defendant's ground, he had a right to deal with it in any way he saw fit, so that he did not cause the run in its usual condition to encroach upon the plaintiffs' property. The defendant is not liable to plaintiffs for any washing, slipping, or other injury to their property, resulting from an extraordinary and unusual condition of the run." To the giving of this the plaintiff by counsel objected, and the court gave to the jury the first sentence of the instruction, but refused to give the second sentence of the instruction, and the defendant, by counsel excepted.

It is claimed by counsel for plaintiffs that there was no evidence tending to show, that the damage was caused by any

extraordinary or unusual condition of the run; that it was either caused by the defendants having changed the run or by the ordinary action of the run. The counsel is mistaken as to there being no evidence tending to show that the damage might have been caused in part at least by the unusual condition of the run. The witness, Annie Wilson, said: "I saw Mr. Kimberly digging in the run that comes down the north side. He took the earth from the bottom of the run. I don't know what effect it had on the run or its course or direction. He was filling it up after a freshet, after the water had washed it down; that *throwed* the water on her side and washed away her part where the fence was standing." Witness James Young said: "I know the run pretty well. I don't think there had been any change in the course of that run in the time I had been living there. It may have varied a little this way at the south side. It has washed in on that side a good little bit; the cause of that was the run—the water, coming down off the hill, washing it out all the time. Every rain some of it washed out. Some times there is a big amount of water comes down there. I have seen it blockade the whole road, and wash people out below. There have been several large wash-outs since I have been living there."

The court had at the instance of counsel for plaintiffs instructed the jury, that "the defendant had no right by any constructions or obstructions to divert the run from its natural course, so as to cause it in its *usual* condition to encroach upon the property of plaintiffs." It was right enough therefore to give the instruction at the instance of defendant, that "The run being wholly on the defendant's ground, he had a right to deal with it in any way he saw fit, so that he did not cause the run in its usual condition to encroach upon the plaintiffs' property." And it would have been right for the court to have given the residue of the instruction: "The defendant is not liable to plaintiffs for any washing, slipping or other injury to their property resulting from an extraordinary and unusual condition of the run," if there had been added thereto the necessary modification, "unless such damage to the plaintiffs' property was rendered greater, by the acts of the defendant." It might be that the putting of obstructions in the run would cause the run—in its extraordinary and un-

usual condition to do much more damage to plaintiffs' property than at such times it would have done but for such obstructions. The court did not err in refusing to give the second sentence of said instructions as asked.

It is also assigned as error, that the court permitted the witness, Butterfield, to give his *opinion* as to the *amount* of damage the plaintiffs had suffered by the acts of the defendant; and *Yost* v. *Conroy*, 92 Ind. is cited. It is there held, that the opinion of a witness as to the damage a ditch would cause to the lands of a party is not proper evidence. Elliot, judge, delivering the opinion of the court, says: "Opinions of witnesses as to the amount of benefit or damage sustained by a party are not competent." He cites a line of Indiana decisions to sustain him, and further says: "It may well be held, that these cases declare the general rule correctly, since to hold otherwise would be to put the witnesses in the place of the jurors, and commit to them the amount of the recovery. A contrary doctrine would also violate the rule, that witnesses can not express an opinion upon the precise point, which the issues present for the decision of the jury." But the learned court did hold in that case, that " the opinion of one acquainted with the property as to its value with and without the ditch is proper evidence." Now it seems to me, that it is a very nice distinction. If the witness testifies, that the property is worth $1,000.00 without the ditch and $800.00 with the ditch, has he not given his opinion, that the land was damaged just $200.00 ? Why may the enquiry not at once be made : "How much is the land injured by the ditch ?" If he answers $200.00, then can not all his reasons for his opinion be elicited on cross-examination ? In *Snow* v. *Boston and Maine R. R.*, 65 Me. 230, it is held, that when the value of real estate taken for a railroad, or the amount of damage caused by such taking is in question, persons acquainted with it may state their opinions as to its value, or as to the amount of damage done, if all is not taken. In *Vandine* v. *Burpee*, 13 Metc. 288, a case much like this, it appeared, that on the trial of an action to recover damages for injury done to the plaintiff's garden and nursery by the smoke, heat and gas proceeding from the defendant's brick kiln, after two gardeners, who had much experience in rais-

ing and cultivating fruit trees, shrubs and plants, had testified to the particulars of the plaintiff's injury, they were asked by the plaintiff : " What was the amount of damage," caused by the injury, to which they had before testified; and it was held that these witnesses might give their opinion as to the amount of such damage.

Dewey, judge, said :   " It seems to us that it would be impracticable to dispense with this species of testimony in many actions of *trover* for personal property, where no detail of facts could adequately inform the jury of the value of the articles.   The opinion of a witness as to the value of a horse is much more satisfactory evidence than a detailed statement of his size, color, age, &c.. to give the jury the requisite information to enable them to assess damages for the conversion of such a horse."

In *Railroad* v. *Foreman*, 24 W. Va. 662, it was held, that such evidence was admissable.   The Court in that case said, by Green, judge :   " There is no objection to taking the opinion of witnesses as to either the amount of damages or as to the amount of the benefit.   It is the usual practice in this State and Virginia."   He cites a number of pertinent authorities to sustain the position.

But the court did err, in permitting the witness against the objection of the defendant's counsel to answer the following question : "State if you can what will be the probable damage that will occur in the future from what has already been done to the run in the way of digging, or changing its course ?"   The witness answered, defendant excepting to question and answer : "Well it is pretty hard for me to answer the question as to the amount of damage, but I think it will be considerable, provided the water course is left in the same condition it is, because it is washing out naturally right against the bank ; and if it had been left full up level to the road where the water used to go, of course the bank would have held up.   This has took half the lot away ; but the prospect is there will be a great deal of slips there with the run."   Why this evidence was offered I do not understand.   The counsel for the defendant in error in his brief says :   The plaintiffs were unquestionably entitled to recover in this action the damages which were likely to occur in the

future as well as those which had already occurred in the past." He cites no authority, neither does he present any argument. It seems to me that both reason and authority are against his position. In *Smith* v. *R. R.*, 23 W. Va. 453, Green J. said : "Where the damage is of a permanent character and affects the value of the estate, a recovery may be had at law of the entire damages in one action; but where the extent of the wrong may be apportioned from time to time, separate actions should be brought to recover the damages sustained. He cites *Troy* v. *Cheshire R. R. Co.*, 23 N. H. 101 ; *Cheshire Turnpike Co.* v. *Stevens*, 13 N. H. 28 ; *Parks* v. *The City of Boston*, 15 Pick. 198 ; *Blunt* v. *McCormick*, 3 Dinio 283 ; *Thayer* v. *Brooks*, 17 Ohio 489 ; 4 Dallas 147 ; *Tucker* v. *Newman*, 11 Ad. & El. 40.

In *Thayer* v. *Brooks*, 17 Ohio 489, *supra*, the action was case for nuisance in diverting the water from the mill of the defendant in error, and the court held that the rule of damages in an action for nuisance is the injury actually sustained at the commencement of the suit.

In *Blunt* v. *McCormick*, *supra*, the court said : " The rule of damages laid down by the court was erroneous. In this action the plaintiff could only recover for injuries actually sustained before suit was brought, and not for supposed prospective damages. Supposing the lease to contain a covenant not to obstruct the light, and the action to have been brought on such covenant, the rule of damages would be otherwise, for the covenant being a single cause of action, one recovery on it would be an absolute bar to any future action. But a recovery in an action on the case, for obstructing the light prior to the time when the action was commenced would not bar a future suit for the continuance of the same injury."

In *Cheshire Turnpike* v. *Stevens*, 13 N. H., *supra*, it was held, that where an action on the case was brought to recover damages for laying out a highway around a turnpike gate, so as to divert the travel from the turnpike, and damages wererecovered for the loss of toll occasioned by the opening of the highway to the date of the plaintiff's suit, subsequent suits might be maintained for further damage accruing from time to time, as long as the

highway was kept open.   A recovery· had been had be-
fore for dividing the tolls, and it was insisted that no action
could be maintained for continuance of the road after
recovery had been once had for the opening of the way.
But Upham, J. for the court, said :  " This is erroneous.
The cause of action remains so long as the cause of the injury
is upheld by the defendant.    It has been in the defendant's
power at any time to discontinue  the grievance  complained
of, and so long as this power remains it would be unjust to
visit him with  damages except  during  the actual time
the damage has  been sustained.    The  injury  is not nec-
essarily permanent  in its character, and  recovery there-
for can only be  had for  the past, as it may cease  at any
moment.   The injury is of the same character as that arising
from a nuisance, and is subject to the same rule of law."
    It seems to me  that in all those  cases, where  the cause of
the injury is in  its nature permanent, and  a recovery  for
such injury would  confer a license on  the defendant  to con-
tinue the cause, the entire damage may be recovered in a single
action ; but, where the cause of the injury is in the nature of a.
nuisance and not  permanent in  its character, but of  such a
character that it may be supposed, that  the defendant would
remove it, rather than   suffer at once  the entire  damage,
which it might inflict, if permanent, then the entire  damage
can not be recovered in  a single  action ; but  actions may be
maintained from time to time, as  long as the cause of the in-
jury continues.   Here the  cause may be  removed, and it is
supposed will be  by  the defendant,  rather than  submit to
having the entire damages recovered against him, for  a per-
manent injury,  or to suffer repeated  recoveries as  long  as
the cause of the injury continues.   The  court  erred  in ad-
mitting this evidence and, for this  reason the  judgment will
have to be reversed.
    It is also assigned  as error, that  on  cross-examination of
Mrs. Hargreaves an objection was sustained to the question :
"Don't your waste water run  to  Mr.  Kimberly's  ground ?"
The court sustained the objection  to this question, and the
defendant excepted.   It was perfectly proper  to show under
the plea of not guilty in  mitigation  of  damages,  that . the
damages alleged by  the plaintiff  are caused in  part by  his

wrongful act; but one trespass can not be set off in bar of another. (*Knight* v. *Brown*, 25 W. Va. 808.) And if the defendant had been prejudiced by this ruling, it would be sufficient for the reversal of the judgment. But while the ruling of the court was error, I do not think it was to the prejudice of the defendant, as immediately afterwards the witness did substantially answer the rejected question.

As the judgment must be reversed, it would be improper to enquire, whether the verdict was justified by the evidence.

The judgment of the circuit court of Ohio county, is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

REVERSED.        REMANDED.