# CHARLESTON.

SAMUEL ARMSTRONG *v.* PINNACLE COAL AND COKE CO.

## (No. 5432)

Submitted February 2, 1926.   Decided February 9, 1926.

1. EASEMENTS—*On Grant of Easement With Care Imposed in Use Thereof, Grantee in Using Such Right Must Assume Care.*

   When a right is granted, with care imposed in the use of the right, the right and the care are correlative. In using the right the grantee must assume the care.   (p. 17.)

   (Easements, 19 C. J. § 218.)

2. ELECTRICITY—*Erection of Electric Power Poles on Roadway by Private Corporation for Private Use, Without Official Permission, Imposes New and Additional Burden on Abutting Owner.*

   The erection of electric power poles on a roadway by a private corporation, for private use, and without permission from any official body, imposes a new and additional burden on the abutting owner.   (p. 17.)

   (Electricity, 20 C. J. § 11.)

   (NOTE:  Parenthetical references by Editors, C. J.—Cyc.  Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by Samuel Armstrong against the Pinnacle Coal & Coke Company.   Judgment for the plaintiff, and defendant brings error.

*Judgment reversed; new trial awarded.*

*R. G. Kelly* and *Payne, Minor & Bouchelle,* for plaintiff in error.

*R. E. Hughes* and *Geo. D. Moore,* for defendant in error.

HATCHER, JUDGE:

The plaintiff owns .9 of an acre of surface in Kanawha County.   The defendant leases and for a number of years has operated the coal underlying and surrounding plaintiff's property.   During the earlier years of operation the mine

was drained through the drift mouth, which is located three or four hundred feet below plaintiff. As the development of the mine progressed, drainage through the drift mouth became impracticable. In 1921 a shaft was sunk above plaintiff, and the mine water has since been pumped out through the shaft, from which it flows across plaintiff's lot. Prior to drainage from the shaft, the water from a well on plaintiff's land was soft and palatable; since then it has been hard and unpalatable. Except following heavy rains, the well water is now impregnated with the characteristic flavor of mine water, and the plaintiff is unable to use it. In 1923 defendant placed two electric power poles on plaintiff's property.

In an action for these trespasses, a judgment was rendered in the Intermediate Court of Kanawha County in favor of plaintiff for $175.00. Interrogatories answered by the jury show that $150.00 was assessed for damage because of the drain, and $25.00 for damage because of the power poles.

The right to drain the mine was granted in a partition deed between the heirs of Joseph Ruffner, to which deed both parties hereto trace title. That right is expressed as follows:

> "It is hereby understood and agreed among the parties to this deed that subterranean and surface rights of way to the Kanawha River to get a perfect drainage for coal banks shall attach and are hereby granted forever to the several owners thereof, respectively, through, under and across over any or all of said tracts of land; but said ways and drainage ways shall be constructed as to be reasonable and just and so as to do no more injury to the land over which they may pass than can be reasonably avoided, each owner using said ways and constructing the same in a reasonable and prudent manner, it being the purpose of this partition to make the several tracts most available to the owners respectively with the least possible detriment to the others."

Plaintiff contends that since the defendant had located and used the drainway at the drift mouth, it had no right to change the drain to plaintiff's land except by mutual consent.

The contention is supported by the law generally applicable to such easements.  *Coal Co.* v. *Hatfield,* 75 W. Va. 148.  However, this rule does not apply to the situation here, because the change was made to obtain a better system of drainage, and was therefore permissible under the purpose of the easement as expressed in the partition deed.

The defendant seeks to justify its use of the plaintiff's lot by the holding of this court in *Preston Coal Co.* v. *Elkins Co.* 82 W. Va. 590.  In that case the "free and uninterrupted"" right was granted to use ways, etc., "without being liable for any injury" to the servient estate.  The right granted in that case is so unrestricted, and so different from the one in this case, that the decision there has little if any bearing here. The use of an easement is confined to the purpose expressed, and must be exercised in the manner specified in the grant which creates it.  19 C. J. 974 par. 218; 9 R. C. L. 787 par. 44; Washburn On Easements p. 283 par 3; *Watts* v. *Johnson* 105 Va. 519.  The purpose of creating the easement herein was "to make the several tracts most available to the owners respectively", and the use was to be exercised "with the least possible detriment to the others".  Under the covenant in the partition deed the right to use plaintiff's land, and the obligation to do him no more injury and detriment than could be reasonably avoided, are correlative.  Having laid hold on the benefit conferred by the covenant, the defendant should have assumed the burden thereby imposed.  It should have constructed the drainway across the plaintiff's land in such manner as would have done no more injury thereto than could have been *reasonably avoided* and with the *least possible detriment* to the plaintiff.  The evidence discloses no attempt whatsoever by the defendant to comply with this obligation.

Neither does the evidence disclose a right in the defendant to locate its power poles on plaintiff's land.  Defendant offers two excuses for this trespass; one, that the poles are located on a roadway extending through plaintiff's property, the other, that the plaintiff offered no objection at the time the poles were set up.  The evidence shows that the roadway in question had been used as such for more than twenty years,

but it does not appear whether the road was private or public. This court held in *Lowther* v. *Bridgemen,* 57 W. Va. 306, that the reasonable use of a *public highway* "for the purpose of placing poles and wires for a telephone for public use under legislative authority" was not an additional servitude upon the fee. But we have never held, and we are cited no authority holding that the placing of poles in a road, by a private corporation for private use, and without permission from any official body, constitutes no additional servitude upon the fee. Joyce on Electric Law, par. 331 and 331-a, is authority that such a use of either a public or private road imposes an additional burden upon the abutting owners.

The plaintiff testified that at the time the poles were set up, he thought the defendant would pay him for the privilege. Further explanation of his failure to protest the erection of the poles was stopped upon an objection of defendant. Plaintiff was also prevented by the court's ruling on a like objection from giving an estimate of the damage occasioned by the defendant's drainway. The jury was accordingly without evidence upon which to base the amount returned in its verdict, and the case will have to be reversed and a new trial awarded.

The plaintiff's opinion on the amount of his damages was admissible under *Hargreaves* v. *Kimberly,* 26 W. Va. 795. The error of the court in refusing to admit such testimony was "invited" by the objection of defendant. Despite reversal, the plaintiff has substantially prevailed, as we uphold his claim for recovery. We therefore award the plaintiff his costs in this court.

*Judgment reversed; new trial awarded.*