## CIRCUIT COURT OF FAIRFAX COUNTY

Chesapeake Holding Co.

v.

George Bilidas et al.

November 20, 2001

Case No. (Chancery) 169455

BY JUDGE DENNIS J. SMITH

This matter is before the Court upon the request of Chesapeake Holding Company ("Chesapeake"), for a declaratory judgment confirming the existence of an easement to display a sign on an adjacent parcel of land owned by the Defendants, George Bilidas et al. ("Bilidas").

Blums, Inc. ("Blums") owned the land which is the subject of this suit as a single lot. In 1959, Blums created a plat for the parcel which established an interior section and two separate exterior sections (for "proposed service stations") with one exterior section along Route 7 (Leesburg Pike). In February 1959, Blums leased the interior plot of land to a bowling alley pursuant to a lease agreement, which expressly allowed the bowling alley to "maintain" a "tower type sign" advertising its business on the exterior tract of land. In 1977, Blums deeded the exterior tract of land, now known as Parcel 44A, to Pappas, who, in September 1985, conveyed that property to the Defendants (Bilidas). On May 31, 1985, the bowling alley's lease term expired. In August 1985, Blums transferred the interior plot of land, Parcel

45A et al., to Chesapeake. Chesapeake remodeled the sign on Parcel 44A at its own expense in 1986 and then again in 2000. Chesapeake now seeks to enjoin Bilidas from removing the sign and further seeks to establish its right to an easement to maintain the sign on the Bilidas property.

Chesapeake first asserts an express easement for use of the sign as it claims that Blums had an easement which was conveyed to Chesapeake in 1985. Chesapeake's theory is that the easement was included in the bowling alley lease of the interior parcel of land, that said lease constituted a part of the chain of title to Parcel 44A, and that the easement thus conveyed as an encumbrance on the property when it was deeded to Pappas in 1977 and then to Bilidas in 1985. This claim fails, however, as the bowling alley's lease terminated on May 31, 1985, which was before Chesapeake acquired the deed to the property on August 29, 1985. Accordingly, the bowling alley's right to maintain the tower-type sign no longer existed in the chain of title at the time Chesapeake became the owner of the servient estate.

Chesapeake next asserts an easement by implication. To establish such an easement, the claimant must prove that:

1. the dominant and servient parcels originated from a common grantor;

2. use of the easement was in existence at the time of the severance; and,

3. use of the easement was apparent, continuous, and reasonably necessary for the enjoyment of the dominant tract.

See Russakoff v. Scruggs, 241 Va. 135, 139 (1991); Brown v. Haley, 233 Va. 210, 216 (1987).

In support of this theory, Chesapeake asserts that before Blums subdivided the property in 1977, Blums had erected a sign on what became the exterior parcel, advertising the business on what became the interior parcel, and that when Blums conveyed the exterior parcels of land to Pappas in 1977, Blums impliedly retained the right to an easement for the use of the sign, as well as the right to convey the easement. In accordance with this line of reasoning, when Blums conveyed the exterior parcel to Chesapeake in 1985, the implied easement conveyed with the property. Chesapeake further points to the uncontested facts that, at the time of the transfer to Pappas, the easement was apparent and continuous, as the sign has been in use since 1959, and that Chesapeake has continuously used the sign since it acquired the lot in 1985. The court finds that Chesapeake has met the first two elements for establishment of an implied easement.

As to the third element, Chesapeake bore the burden of proving that its use of the sign is "reasonably necessary" to the use of the land. To carry their burden, Chesapeake presented testimony, *inter alia*, from the store manager of the Junior League Thrift Shop, located on the interior parcel. She testified that store traffic and sales had increased since the Thrift Shop's name was placed on the signs in 2000. The evidence presented by Chesapeake, however, was insufficient to support its claim that the use was reasonably necessary to the enjoyment of its land.

In *Fones v. Fagan*, 214 Va. 87 (1973), the Fagans sought an easement by necessity and by implication to access the public roadway by use of a driveway on the Fones' land. While the Fagans established that constructing a new driveway accessing the public road from their property would be costly and might be difficult to use, the Virginia Supreme Court held that they had failed to establish a "reasonable necessity" for the easement. While acknowledging that Virginia does not adhere to the "absolute necessity" rule but rather imposes a "reasonable necessity" standard, Justice Cochran, writing for a unanimous Court, went on to state that "[i]f another means of access exists, though less convenient or more expensive to develop, no way of necessity arises." *Fones v. Fagan*, at 90. This approach is consistent with the holding this Court makes today. In this case, it was established that the property had available to it and used alternative advertising on another sign which is on Complainant's property. At most, the evidence presented by the Complainant established that there *could be* an adverse economic impact if the contested sign were removed. The Court cannot find that the plaintiff has established by clear and convincing evidence a "reasonable necessity" for an implied easement, whether by necessity or by implication.

Chesapeake's contention that it has a right to maintain the sign through an easement reserved by implication must fail for an additional reason. Traditionally, the party claiming the right to establish an easement by implication has been the purchaser of the dominant tract from the grantor. Such an easement is called an "implied easement by grant." In this instance, however, Chesapeake contends that the Grantor *impliedly reserved* an easement from the purchaser of the exterior tract of land while simultaneously transferring title in fee simple. Such an *implied reservation* has been mentioned in Virginia law, but the Court has not found any elaboration on the elements of proof necessary to create such an easement, other than dicta affirming the clear and convincing standard.

A tangential reference to a potential difference in standards was found in *Kirk v. Hoge*, 123 Va. 519 (1918), wherein the Court specifically declined to discuss "the distinctions which are drawn by the authorities as to when a reservation of an easement, as appurtenant to real estate retained by a grantor, will be implied in law." *Id.* at 530.

The exclusion of all possibility of an implied easement by reservation would be too harsh a rule, as there are situations in which the grantor might be deprived of use of the property without the implied easement. If the rule is too broad, however, its negative impact on the recordation system and its aim to provide certainty to the purchasers and grantees of land would be too great. Accordingly, the Court holds that an implied easement cannot be created when the *grantor* is claiming an implied reservation unless the party claiming the easement establishes by clear and convincing evidence that (1) the use was continuous, (2) the use was apparent, and (3) without the easement the property is not capable of being used in the manner in which it was used by the owner at the time of the severance. The application of a higher standard akin to "strict necessity" is warranted in the case of an implied reservation as opposed to an implied grant, as, in the former case, the grantor seeks to modify statements it has made in the recorded deed of conveyance. As stated in 2 Minor, *Real Property* (2d ed.), § 100:

> "The *implied reservations* of easements must be based on grounds of public policy, which does not approve of the ownership of lands without the practical capacity to make them useful and beneficial to the community, and hence, where in order to make the land retained by the grantor *productive* and *useful to the public* (the individual grantor's interest being only incidental), it may be necessary to imply an easement in the land conveyed (the *servient* estate) in favor of the *dominant* tract retained by the grantor.

Chesapeake's theory also necessarily requires a finding that Blums retained an implied easement when it transferred a portion of the property to Pappas during the term of the express easement set out in the Bowling Alley lease. Proof which establishes that the establishment of the easement may make property more economically beneficial to the owner does not satisfy this test. Nothing in the evidence or in the law would warrant this Court's conclusion that an implied easement was created which contradicted (at least in terms of discretion) the specific terms set forth in the recorded lease.

Finally, Chesapeake asserts an easement by prescription. In order for Chesapeake to establish the existence of an easement by prescription, use of the sign must have occurred for twenty years. *Blue Ridge Poultry & Egg Co. v. Clark*, 211 Va. 139 (1970). As Chesapeake acquired the property in 1985, its use and maintenance of the sign did not occur for twenty years. In addition, Chesapeake may not include the bowling alley's use of the sign to fulfill its twenty-year obligation as the bowling alley's use was consensual and not adverse since the bowling alley's lease agreement expressly allowed it to maintain the sign. Consequently, Chesapeake did not establish a claim for an easement by prescription.

In accordance with the foregoing, the Complainant's Bill of Complaint is hereby dismissed. No fees are awarded to either party.